Mr. David B. Erwin Attorney at Law Post Office Box 1833 Tallahassee, Florida 32302-1833
Dear Mr. Erwin:
On behalf of the Board of Directors of Sunshine State One-Call of Florida, Inc., you ask:
Whether the Board of Directors of Sunshine State One- Call of Florida, Inc., created pursuant to chapter 556, Florida Statutes, is subject to the requirements of the Sunshine and Public Records Laws?
In sum:
Meetings of the Board of Directors of Sunshine State One-Call of Florida, Inc., are subject to the requirements of the Government in the Sunshine Law and records of the corporation and its board of directors come within the scope of the Public Records Law.
Chapter 556, Florida Statutes, entitled the "Underground Facility Damage Prevention and Safety Act," was adopted in 1993.[1] The act states that:
It is the intent of the Legislature to provide a single toll-free telephone number for excavating contractors and the general public to call for notification of their intent to engage in excavation or demolition. This notification system shall provide the member operators an opportunity to identify and locate their underground facilities.[2]
"Underground facility" is defined for purposes of the act to mean public and private personal property, which is buried or submerged on a member operator's right-of-way, easement or use and is being used in connection with the storage or conveyance of "water; sewage; electronic, telephonic, or telegraphic communication; electric energy; oil; petroleum products; natural gas; optical signals; or other substances, and includes, but is not limited to, pipelines, pipes, sewers, conduits, cables, valves, and lines."[3]
The purpose of the act is to assist the public by preventing injury to individuals or property and the interruption of services that may result from damage to an underground facility caused by excavation or demolition.[4] The act creates a not-for-profit corporation made up of operators of underground facilities in Florida, which is charged with administering the act.[5] The cost of administration is to be born entirely by contributions assessed on the member operators.[6]
Your question is whether the board of directors of the not-forprofit corporation created under the act and designated "Sunshine State One-Call of Florida, Inc." is subject to the Sunshine Law and the Public Records Law.
Section 556.103, Florida Statutes, provides that:
The "Sunshine State One-Call of Florida, Inc." is hereby created as a not-for-profit corporation. Any operator of an underground facility in this state may be a member of the corporation and may use and participate in the system. The corporation shall be formed by June 1, 1993. The corporation shall administer the provisions of this act. The corporation shall exercise its powers through a board of directors established pursuant to this section.[7]
The membership of the corporation is charged with electing a board of directors, which is to administer the system.[8] The board of directors is authorized by the statute to assess members a fee to fund the system.[9] Finally, the board is required to report annually to the Governor on the operation of the system.[10]
Government in the Sunshine Law
Section 286.011(1), Florida Statutes, the Government in the Sunshine Law, provides in part that:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times. . . .
Florida case law provides that the Sunshine Law should be liberally construed to give effect to its public purpose.[11] In determining which entities may be covered by the Sunshine Law, the courts have stated that it was the Legislature's intent to extend application of the law so as to bind "every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control."[12]
In Attorney General Opinion 92-80, the board of directors of another nonprofit corporation created by the Legislature, Enterprise Florida, Inc., was determined to be subject to the Sunshine Law. Enterprise Florida, Inc., was created by the Legislature and incorporated as a not-for-profit corporation under chapter 617, Florida Statutes, for a public purpose. Membership on the Board of Directors of Enterprise Florida, Inc., was statutorily prescribed, as was the manner of appointment. The board of directors consists of both governmental and private entities. The opinion notes that the not-for-profit corporation was created pursuant to statute, that the board of directors was composed of public officials, and that their powers and duties were prescribed by statute. Thus, it was concluded that the Board of Directors of Enterprise Florida, Inc., was clearly within the dominion and control of the Legislature and its meetings are subject to the Government in the Sunshine Law.
Similarly, the not-for-profit corporation Sunshine State One-Call of Florida, Inc., is created by statute to serve a public purpose.[13] Membership in the corporation and on the board of directors may include both public and private entities.[14]
Administration of the provisions of the act through the onecall notification system and the procedures to be utilized in providing information to the system are statutorily prescribed,[15][as are penalties for violations of the act.[16] Thus, the Board of Directors of the Sunshine State One-Call of Florida, Inc., is within the dominion and control of the Legislature and meetings of the board must comply with section 286.011, Florida Statutes.
Public Records Law
Chapter 119, Florida Statutes, the Public Records Law, requires that records made or received in connection with the transaction of official business by an agency, as defined therein, must be open for inspection in the absence of a statute exempting the record or making it confidential.[17] "Agency" is defined to mean:
[A]ny state, county, district, authority, or municipal officer, department, division, board,
bureau, commission, or other separate unit of government created or established by law . . . and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.[18]
To determine whether a private entity is "acting on behalf of" a public agency, the courts have adopted a test involving analysis of a totality of factors. In making this determination the courts will consider:
1) Creation — did the public agency play any part in the creation of the private entity? 2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity? 3) Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment? 4) Decision-making process — does the private entity play an integral part in the public agency's decisionmaking process? 5) Governmental function — is the private entity exercising a governmental function? 6) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?
While not any one factor would subject an entity to the requirements of the Public Records Law, the factors viewed together might well require a private entity to comply with chapter 119, Florida Statutes.
In developing the totality test, the Court relied on several earlier district court opinions. For example, in Schwartzman v. Merritt Island Volunteer Fire Department,[19] the court held that a private nonprofit volunteer fire department, which had been given stewardship over firefighting, which conducted its activities on county owned property, and which was funded in part by public money, was an agency and its membership files, minutes of its meetings and charitable activities were subject to disclosure.
More recently, this office considered whether the Tampa Bay Performing Arts Center, Inc., was an "agency" within the scope of the Public Records Law. The center was created as a private not-for-profit corporation to provide for the cultural and educational enhancement of the general public. The board of trustees of the center included a number of public officials or their designees. The City Council of the City of Tampa had passed a resolution authorizing the city to enter into a lease with the center to operate the city's performing arts facility. The facility, which is owned by the city, was leased to the center for a period of years at a yearly rental of $100. Although the lease provided that the center would operate the facility as an independent contractor, the center was authorized to request and had received public funding.
Based on a review of the facts regarding the relationship between the center and the city in their totality, this office concluded that the center was an "agency" as that term is defined for purposes of chapter 119, Florida Statutes, and thus was subject to the requirements of that law. Although the center was not created by a public agency, the center was governed by a board of trustees composed of a number of city and county officials or mayoral appointees. The center utilized public property in carrying out its goals — goals that were similar to those of the city: the provision and enhancement of the performing arts for the benefit of the public. The center performed a function that the city itself had stated constituted a governmental function.
Similarly, a review of the "totality of factors" analysis as it relates to Sunshine State One-Call of Florida, Inc., leads me to conclude that it is an agency for purposes of chapter 119, Florida Statutes. The corporation was created by the Legislature, is governed by a board of directors that may include public officials and operates by utilizing, in part, fees paid by public agencies with public funds. Further, the corporation exercises what is essentially a governmental function, that is, the protection of the public from injury to persons or property and prevention of the interruption of services caused by excavation or demolition operations.
Therefore, it is my opinion that Sunshine State One-Call of Florida, Inc., is an agency for purposes of chapter 119, Florida Statutes,[20] and the records of the corporation and its board of directors are subject to the Public Records Law.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, Ch. 93-240, Laws of Florida (1993).
[2] Section 556.101(2), Fla. Stat. (1993).
[3] Section 556.102(9), Fla. Stat. (1993).
[4] Section 556.101(3)(a), Fla. Stat. (1993).
[5] Section 556.101(3)(b), Fla. Stat. (1993).
[6] Section 556.101(3)(c), Fla. Stat. (1993).
[7] Section 556.103(1), Fla. Stat. (1993).
[8] Section 556.103(2), Fla. Stat. (1993).
[9] Section 556.103(3), Fla. Stat. (1993).
[10] Section 556.103(4), Fla. Stat. (1993).
[11] See, e.g., Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969); Wood v. Marston, 442 So.2d 934
(Fla. 1983) (statute should be broadly construed to effect its remedial and protective purposes).
[12] See, e.g., Times Publishing Company v. Williams,222 So.2d 470, 473 (Fla. 2d DCA 1969), and City of Miami Beach v. Berns,245 So.2d 38 (Fla. 1971); and see, Op. Att'y Gen. Fla. 92-17 (1992).
[13] See, s. 556.101(2) and (3)(a), Fla. Stat. (1993), providing the purpose of the act.
[14] See, s. 556.103(2), Fla. Stat. (1993), which states that the membership of the corporation shall elect a board of directors, and s. 556.102(7), Fla. Stat. (1993), which defines "[m]ember operator" to include any person who furnishes or transports materials or services by means of an underground facility and elects to participate in the system, and s. 556.102(8), Fla. Stat.(1993), defining "[p]erson" to mean "any individual, firm, joint venture, partnership, corporation, association, municipality, or other political subdivision, governmental unit, department, or agency. . . ."
[15] See, s. 556.104, Fla. Stat. (1993), requiring the corporation to establish a one-call notification system; and s. 556.105, Fla. Stat. (1993), providing procedures for filing information with the system.
[16] See, s. 556.107, Fla. Stat. (1993).
[17] See, s. 119.07(1), Fla. Stat. (1993).
[18] Section 119.011(2), Fla. Stat. (1993).
[19] 352 So.2d 1230 (Fla. 4th DCA 1977).
[20] I would note that section 556.105(2), Florida Statutes, requires that:
Each notification by means of the system shall be recorded to document compliance with this act. Such record may be made by means of electronic, mechanical, or any other method of all incoming and outgoing wire and oral communications concerning location requests in compliance with chapter 934. Such records shall be kept for a period of 5 years and, upon written request, shall be available to the excavator making the request, the member operator intended to receive the request, and their agents. However, custody of the records shall not be transferred from the system except under subpoena.
Notification through the system involves use of the toll-free telephone notification system. Thus, this section relates to recording telephone calls rather than to a determination of the nature of the records of the corporation and its board of directors pursuant to chapter 119, Florida Statutes.